## CARRIGAN v. BYRD.

1. The delivery of a deed of conveyance is composed of two concurrent parts: (1) an intention to deliver, and (2) an act evincing a purpose to part with the control of the instrument. Neither of these parts, by itself, is sufficient to constitute delivery.

2. The Circuit Judge, upon testimony taken before him, found as matter of fact that the grantor had delivered certain deeds in question, and this court concurred in such findings.

3. This court will not reverse a Circuit Judge's finding of fact, upon conflicting testimony, in cases where he has observed the witnesses, unless the overbearing weight of such testimony is clearly against his finding.

4. It is not a safe rule to set aside a finding of fact upon a consideration of the probabilities of human conduct.

5. The plaintiff, a subsequent mortgagee for value, had in this case sufficient information of certain prior unrecorded voluntary deeds to charge him with notice of their delivery.

6. A, being then indebted, made three voluntary conveyances of his land, and afterwards judgments were obtained against him on this antecedent indebtedness. B, with notice of these prior deeds, advanced a sum sufficient to pay off these judgments, which were then assigned to him; and as further security, A gave to B a bond with a higher rate of interest, and a mortgage of the land embraced in the said voluntary conveyances. In action by B against A and these grantees to foreclose such mortgage,—*held*, that the deeds were not a fraud upon any rights which B was here seeking to enforce; and, therefore, whether A owed any other debts at the time he made the conveyances, was irrelevant in this action.

7. The rights of a party under a supposed, but unproven, state of facts, not considered.

Before PRESSLEY, J., Darlington, October, 1883.

At the hearing of this appeal, honorable W. H. Wallace, judge of the seventh Circuit, sat in the stead of Mr. Justice McIver, who had been of counsel in the cause.

This was an action by William A. Carrigan against Evander Byrd, Lewis S. Byrd, Peter J. Byrd, and Sarah E. Coker, commenced in January, 1876. The cause was heard by Judge Pressley upon the pleadings and upon testimony taken before him at the hearing. He subsequently filed a decree, which is substan-

tially stated in the opinion of this court, as are also the plaintiff's exceptions thereto.

*Messrs. Boyd & Nettles,* for appellant.

*Messrs. E. K. Dargan* and *G. W. Dargan,* contra.

May 2, 1885.  The opinion of the court was delivered by

MR. JUSTICE WALLACE.  This is an action to foreclose a mortgage of real estate.  The mortgage was executed to plaintiff by Evander Byrd on July 13, 1871, to secure a bond of the same date.  The consideration of the bond was money expended by plaintiff, at the request of Byrd, in purchasing certain judgments that had been obtained against Byrd by his creditors, who were pressing for payment.  Upon a composition between the holders of the judgments and plaintiff, the judgments were assigned to the latter.  As further security, plaintiff took a chattel mortgage from Byrd, and, as still further security, he took from Byrd a bond and mortgage of real estate—that which he seeks to foreclose in this action.  The bond provides for a larger rate of interest than that borne by the judgments.

This action was commenced against Evander Byrd, the debtor, and also against certain children of Evander Byrd, to wit: Sarah Coker, Lewis Byrd, and Peter Byrd.  The complaint, besides the usual allegations of a complaint for foreclosure, alleged that the defendants, Sarah, Peter, and Lewis, claimed an interest in the land described in the mortgage adversely to the claims of the plaintiff, and tendered an issue to these upon the validity of their respective claims.  Evander Byrd did not answer.  Sarah, Peter, and Lewis answered, and alleged that Evander Byrd, their father, had conveyed to each of them by deed, bearing date January 4, 1870, and before the execution of the bond and mortgage upon which the action is brought, different parcels of the land described in the mortgage; that these deeds were not recorded in the registry office at Darlington, but that plaintiff had actual notice of them before he took the bond and mortgage; that Evander Byrd had other property, real and personal, besides that embraced in the mortgage; and that by reason of the aforesaid chattel mort-

gage and of the judgments assigned to him, plaintiff had it in his power to obtain satisfaction of his debt without resorting to the land conveyed to these defendants. It appears from the case that the debts upon which the judgments against Evander Byrd were obtained, which were assigned to plaintiff, were in existence when the deeds were executed, and the judgments were obtained upon them after the execution of the deeds. There is no controversy about the execution of the bond and mortgage. Nor, on the other hand, any question as to the execution of the deeds.

Plaintiff attacks the sufficiency of the deeds to protect the grantees against his mortgage upon three grounds: *First.* Because they were never delivered by Evander Byrd. *Second.* Because, if delivered, he had no notice of the deeds. *Third.* Because, being voluntary, they are fraudulent and void as to debts existing at the time of their execution. These issues were decided by the Circuit Judge adversely to the plaintiff, and the grounds of appeal make the same questions here.

Plaintiff's first ground of appeal is, in substance, that the preponderating weight of the testimony is against the delivery of the deeds. The delivery, necessary to transfer title to real property under a deed signed and sealed, is composed of two concurrent parts, namely, an intention to deliver and an act evincing a purpose to part with the control of the instrument. Neither of these parts by itself is sufficient to constitute delivery. There may be an intention never consummated, and the instrument may be put in the custody of another, to be held subject to the control of the grantor. This rule is so well settled that it is only necessary to refer to some of our cases which declare it. *Broughton* v. *Telfer*, 3 *Rich. Eq.*, 435; *Wood* v. *Ingraham*, 3 *Strobh. Eq.*, 111; *Jackson* v. *Inabnit*, 2 *Hill Ch.*, 412; *Arthur* v. *Anderson*, 9 *S. C.*, 249; *Fraser* v. *Davie*, 11 *Id.*, 69.

It is not disputed that the deeds challenged here were put in the possession of Mrs. Coker, one of the grantees, by Evander Byrd. In the case of *Hagood* v. *Harley* (8 *Rich.*, 328), there is a strong intimation, and authority referred to in support of the intimation, that when a grantor puts a deed into the possession of the grantee, to be his deed upon the performance of a condition, that this is an absolute delivery, and the subsequent words are

void and repugnant. This could only relate to the deed to Mrs. Coker, and according to our view of the case it is not necessary to rest the decision of this question upon it.

The deeds having been put in the possession of Mrs. Coker, the question is, with what purpose was it done? The testimony as to what was said and done at the time of the act is conflicting. Mrs. Coker testifies that when the deeds were executed on July 13, 1870, her father gave the deed to her into her hands: that her two brothers, Peter and Lewis, were minors and absent from home and that her father offered to her the deeds to them, and said: "This is law, you must stand proxy for the boys as they are not here," and that then she took these deeds and gave them to the boys upon their return from school. She also says that the deed to her brother David was at that time delivered to him, and that he requested her to keep it for him, which she did.

It is not our purpose to go, with any degree of detail, into the testimony; but we will mention some of the circumstances testified to in support of the testimony of Mrs. Coker. Among these are the facts that at the time the deeds in controversy here were executed, similar deeds of equivalent parcels of land were made to Mr. Moore, son-in-law, and to David, son of Evander Byrd. Some days subsequently to the execution of the deeds, all of them were carried by Evander Byrd to Darlington and duly probated. Moore went with Evander Byrd that day, and received his deed from him that day. Upon his return home Evander Byrd gave all the deeds, save Moore's, into the possession of his daughter, Mrs. Coker. It does not appear that David was present then, but some time after he took his deed into his possession, with the knowledge of Evander Byrd; Peter and Lewis were still away from home. A short time before the execution of the deeds Evander Byrd had given to his son John one thousand dollars in money, which was considered about the equivalent of the quantity of the land conveyed by each deed. One of the daughters of Evander Byrd was married and living in the West; a parcel of land about equal in value to the separate parcel conveyed was reserved for her, but no deed to her made. In addition to the foregoing facts is the striking fact that Byrd upon the recurrence of the next time, after the execution of the deeds, for listing

property for taxation, returned to the auditor for taxation all the land conveyed to these defendants as their property respectively. If the testimony of Mrs. Coker is true, then certainly the intention of Evander Byrd to deliver the deeds at the time they were put in her possession is clearly proved. Else, why stand proxy for the boys except to receive what was intended to be delivered to them?

On the other hand, Evander Byrd testifies in substance that when he put the deeds in possession of his daughter, Mrs. Coker, he had no intention to deliver the deeds, but meant to retain control of them and keep them in lieu of a will, and that they were delivered to Lewis and Peter, and the one to herself retained by Mrs. Coker, in violation of his intention and her trust. This testimony is corroborated by the statements of Moore, that when the deeds were brought back after they had been probated, Evander Byrd handed them to Mrs. Coker, saying: "Take care of them for me." Isaac Gainey says that Lewis told him since the commencement of this action that "he had heard that his father was not going to give them these deeds, and he got his sister to get them out for him." W. E. Coker testifies that Peter told him since the commencement of this action "that his father had not put him in possession of the land." If the testimony of Evander Byrd is true, then beyond question there was no delivery. No useful purpose will be subserved by extending this opinion with a fuller discussion of the testimony relating to this issue.

The Circuit Judge, a magistrate of great experience in the trial of causes at the bar and on the bench, after hearing and seeing the witnesses and listening to the argument of counsel, declares himself satisfied that the preponderance of the evidence is in favor of the defendants, and adds that the manner and testimony of Mrs. Coker were more satisfactory to him than that of Evander Byrd. These are the two leading witnesses, and in effect their testimony is conflicting. It goes without the saying that a man of intelligence and long experience in the trial of cases acquires a degree of art in forming correct beliefs as to the credibility of witnesses almost unerring. This fact renders this court, which has not the advantage of observing witnesses under examination, slow in reversing a finding of fact by a Circuit

Judge, in cases where the testimony is conflicting, and opinions therefore of the credibility of witnesses must be formed, unless the overbearing weight of the testimony is clearly against the finding. Neither is it a safe rule to set aside such a finding upon a consideration of the probabilities of human conduct. Every one conversant with human affairs knows that not unfrequently it is the improbable that happens, and whether the happening seems probable or improbable depends largely upon the point of view and a knowledge of obscure motives and reasons of conduct which are concealed, and ignorance of which may lead to erroneous conclusions and injustice.

This court agrees with the Circuit Judge, that upon the whole case the weight of the testimony is in favor of the allegations of the defendants Sarah, Peter, and Lewis, and that the deeds in dispute were duly delivered.

The second ground of appeal makes the question that plaintiff had no notice of the delivery of the deeds. The deeds were executed on January 4, 1870, but were not recorded on the day of the execution of the bond and mortgage, to wit, July 13, 1871. Evander Byrd informed the plaintiff at and before the execution of the bond and mortgage that the deeds had been made; but added that only the deeds to Moore and David had been recorded and delivered. Upon an examination of the registry office at Darlington, plaintiff found the deeds to Moore and David recorded and the others not. These facts were calculated to induce him to believe that Evander Byrd had correctly informed him as to the status of the deeds, yet he knew the deeds had been made. Evander Byrd did not produce them or inform him where they were. They might have been delivered and not recorded. He had paid taxes on the land described in the deeds in the names of the grantees respectively at the request of Evander Byrd. He had asked John Byrd why it was that Mrs. Coker's tax was the largest, and had been informed that her father had given her the home place which was most valuable.

These facts show that plaintiff had express and explicit notice of the existence of the deeds. If they had been duly recorded and inspected by plaintiff, he would have had no more information, for the recording would not have established the delivery. He

in point of fact had more information than he could have derived from an inspection of the record, if they had been recorded, for Evander Byrd had admitted to him the existence of the deeds and recognized their efficacy by asking him to pay taxes upon the land listed in the name of the grantees. The plain dictates of common prudence required the plaintiff under these circumstances to ascertain the actual state of the facts, or be bound by them as they were. *City Council* v. *Page,* 1 *Speer Eq.*, 212; *Wallace* v. *Craps,* 3 *Strobh.*, 268; *Farr* v. *Sims, Rich. Eq. Cas.*, 122; *Black* v. *Childs,* 14 *S. C.*, 321.

Plaintiff's counsel proposed to ask Evander Byrd, when he was being examined as a witness: "Did you owe other debts, discovered after, and not known at that time?" This question was objected to, and the objection sustained by the Circuit Judge. The fourth ground of appeal alleges the rejection of this question as error. The time referred to in the question was the time when the deeds were executed. The object of the question was to show that these deeds, being voluntary, were, as to existing debts, fraudulent and void. Actual fraud was not alleged, nor offer made to prove it. It will be borne in mind that there were outstanding debts against Evander Byrd at the time of the execution of the deeds, and upon these debts judgments were obtained after the deeds were executed. The judgments were, and could only be, assigned to plaintiff after the deeds were made, for they were not in existence before. For the money expended in their purchase, he took from Evander Byrd the bond and mortgage he seeks to enforce in this action. The rate of interest stipulated for in the bond was larger than that borne by the judgments. The money which the bond and mortgage was given to secure was paid by plaintiff after the deeds were made. It is obvious, therefore, that any rights plaintiff acquired under the bond accrued subsequent to the execution of the deeds, and they are not, therefore, though voluntary, a fraud upon the rights he seeks to enforce in this action. The question ruled out by the Circuit Judge was irrelevant in this action.

The fourth ground of appeal is, because his honor erred in holding as follows: "If plaintiff did not have notice of said deeds, or the same as voluntary were fraudulent as to creditors then exist-

ing, still I could not give him here the remedy he seeks, because I find that he has in his hands money of the mortgagor not applied to the mortgage, with intent to keep it open and enable mortgagor in this case to set aside his voluntary deeds; and because plaintiff has a chattel mortgage for same debt and judgments at law assigned to him which he has not attempted to enforce, and that purposely and by favor to the mortgagor, to enable him to invalidate said deeds in this action." It has been decided above, that plaintiff had notice of the deeds, and that they were not fraudulent as to any rights which plaintiff seeks to enforce in this action. It is, therefore, manifestly unprofitable to discuss in this opinion what would be his rights upon a supposition that he had no notice of the deeds, and that as to him they were fraudulent.

It is the judgment of this court that the judgment of the Circuit Court be affirmed.